**STATE of Tennessee, Appellee,**

v.

**Henry SMITH, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

March 21, 1995.

Certiorari Denied July 3, 1995.

Martha Yoakum, Public Defender, Tazewell (on appeal), Charlie Allen, Jr., Oneida, Charles Herman, Asst. Public Defenders, Tazewell, (at trial), for appellant.

Charles W. Burson, Attorney General & Reporter, Jennifer L. Smith, Asst. Attorney General, Nashville, William Paul Phillips, District Attorney General, Huntsville, Shayne Sexton, Asst. District Attorney General, Tazewell, for appellee.

## OPINION

PEAY, Judge.

On December 16, 1992, the defendant entered a nolo contendere plea to rape.[1] Following a sentencing hearing, the trial judge sentenced the defendant as a Range I standard offender and imposed a twelve-year sentence, the maximum within the range.

In this appeal as of right the defendant raises four issues for review. First, he claims that the trial court erred by applying the gratification enhancement factor, T.C.A. § 40–35–114(7). Second, he similarly contends that the trial court improperly applied the "particularly vulnerable" enhancement factor, T.C.A. § 40–35–114(4). Third, he asserts that the trial court failed to consider and apply all applicable mitigating factors. Finally, he claims that the trial court erred in failing to grant probation or some other form of alternative sentencing. Following a review of the record, we affirm the twelve-year sentence.

The testimony presented at the hearings revealed that the defendant had had sexual relations with D.L.,[2] a minor, who at the time was thought to be his daughter. The com-

---

1. The five-count indictment charged the defendant with one count each of aggravated rape, rape, sexual battery, and with two counts of incest. Because the paternity tests revealed that the defendant was not the victim's biological father, the two incest charges were voluntarily dismissed by the prosecutor. Further, as part of the plea agreement, the aggravated rape and sexual battery counts were also dropped.

2. It is this court's policy to use only the initials of sex crime victims who are minors.

plexity of the relationship arose from the family environment established by the defendant and D.L.'s mother. Because the defendant and D.L.'s mother lived together, D.L. spent much of her life believing that the defendant was her biological father. In fact, the defendant acknowledged that D.L. thought he was her father but claimed he had always doubted that he was her biological father. Paternity testing later confirmed that the defendant was not D.L.'s biological father. Further, because the defendant and D.L.'s mother were never married, a step-father/step-daughter relationship was never legally created.

Nonetheless, when the relationship between D.L.'s mother and the defendant ended, D.L. and her mother moved to New Jersey. During the summer, D.L. would visit the defendant in Tennessee and during these visits D.L. and the defendant had sexual relations. D.L., aged fourteen at the time of the incidents, became pregnant and gave birth to the defendant's child. This fact was confirmed by a blood test indicating a 99.7 percent likelihood that the defendant was the child's father.

At the sentencing hearing the testimony revealed that the defendant felt remorseful but had not attended counseling as of the hearing date. When questioned further regarding his pursuit of counseling, the defendant could not provide the names of psychiatrists or psychologists he had allegedly contacted. When asked why he had committed these acts for which he had been accused, the defendant gave only general, non-responsive answers. He stated that D.L. lived in a family that did not love her and that his family offered her love. In addition, the defendant stated that D.L. had had other problems with her mother.

During the State's questioning the defendant admitted that when the sexual relations occurred both he and D.L. thought a father-daughter relationship existed; however, he again stated that he had always doubted that he was D.L.'s biological father. The defendant acknowledged the birth of a son between D.L. and himself but claimed he had paid no child support because he was told to have no contact with the victim. However, the testimony indicated that the defendant was unemployed at the time of the hearing and had been terminated from his last job due to falsification of his employment application.

The trial judge found two enhancement factors and one mitigating factor and sentenced the defendant to the maximum sentence within the range of twelve years.

The defendant's four issues challenge the sentence imposed by the trial court. Because the first three issues deal with the application of enhancing and mitigating factors, we combine them for review. When a defendant complains of his or her sentence, we must conduct a *de novo* review with a presumption of correctness. T.C.A. § 40–35–401(d). The burden of showing that the sentence is improper is upon the appealing party. T.C.A. § 40–35–401(d) Sentencing Commission Comments. This presumption, however, is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991).

A portion of the Sentencing Reform Act of 1989, codified at T.C.A. § 40–35–210, established a number of specific procedures to be followed in sentencing. This section mandates the court's consideration of the following:

(1) The evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40–35–113 and 40–35–114; and (6) [a]ny statement the defendant wishes to make in his own behalf about sentencing.

T.C.A. § 40–35–210.

In addition, this section provides that the minimum sentence within the range is the presumptive sentence. If there are enhancing and mitigating factors, the court must start at the minimum sentence in the range and enhance the sentence as appropri-

ate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. If there are no mitigating factors, the court may set the sentence above the minimum in that range but still within the range. The weight to be given each factor is left to the discretion of the trial judge. *State v. Shelton,* 854 S.W.2d 116, 123 (Tenn.Crim.App.1992).

The Act further provides that "[w]henever the court imposes a sentence, it *shall place on the record* either orally or in writing, what enhancement or mitigating factors it found, if any, as well as findings of fact as required by § 40–35–209." T.C.A. § 40–35–210(f) (emphasis added). Because of the importance of enhancing and mitigating factors under the sentencing guidelines, even the absence of these factors must be recorded if none are found. T.C.A. § 40–35–210 comment. These findings by the trial judge must be recorded in order to allow an adequate review on appeal.

■ The defendant first claims that the trial court improperly applied T.C.A. § 40–35–114(7) which permits enhancement where the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement. In *State v. Adams,* 864 S.W.2d 31, 34–35 (Tenn.1993), our Supreme Court held that this enhancement factor may apply in rape cases because some rapes are not committed for pleasure. "Pleasure or excitement is not an essential element of the offense and, therefore, may be considered as an appropriate enhancement." *Adams,* 864 S.W.2d at 35. The State carries the burden of demonstrating that the rape was sexually motivated. *Adams,* 864 S.W.2d at 35.

The defendant claims that the State failed to meet its burden. We agree. The State admits that the trial court did not make a specific finding of fact but insists that the record supports this factor. Specifically, the State points to the defendant's testimony that D.L.'s home environment was poor and that D.L. did not receive love at her mother's home in New Jersey. The State also cites in support of this factor the defendant's testimony that his family was loving and that when D.L. stayed with them in the summer,

she stayed as his daughter. Upon review, we agree that the State failed to present sufficient proof to meet its burden of establishing this enhancement factor.

■ Next, the defendant challenges the trial court's application of T.C.A. § 40–35–114(4) that the victim was particularly vulnerable because of age or physical or mental disability. As with the enhancement factor discussed above, the State bears the burden of proving the victim's limitations rendering her particularly vulnerable. *Adams,* 864 S.W.2d at 35. The defendant asserts that the State has again failed to meet its burden in that the record is void of any sworn testimony demonstrating that the victim was particularly vulnerable. On the other hand, the State contends that the testimony presented at the sentencing hearing and the information contained in the presentence investigation report establish this factor. Specifically, the State points to the defendant's testimony that D.L. was not loved at her mother's home and that problems existed between D.L. and her mother. Additionally, the testimony of defendant's witness, Mary Smith, indicated that D.L. appeared withdrawn and that D.L. would not talk or communicate. The defendant contends that D.L.'s age is the only support for this factor and that age alone does not justify enhancement. We agree with the State. We find that the testimony, *combined with the age of the victim,* supports the application of this enhancement factor.

■ Though not raised at the sentencing hearing, the State now asserts that T.C.A. § 40–35–114(15) is applicable due to the apparent father-daughter relationship thought to have existed during the incidents of sexual relations. "[This Court], in conducting its *de novo* review, is authorized to consider any enhancement (or mitigating) factors supported by the record" even if not relied upon by the trial court. *Adams,* 864 S.W.2d at 34. The State urges us to consider T.C.A. § 40–35–114(15) because the defendant abused a position of private trust. After reviewing the record, we find support for the application of this factor. The proof established that when the sexual incidences occurred D.L. thought the defendant was her

father. In his own testimony the defendant acknowledged that D.L. thought he was her biological father and further that he suspected but did not know for sure whether D.L. was not his daughter. Further, even if this relationship did not exist, the defendant and D.L. in fact maintained a step-father/step-daughter relationship even though no such relationship legally existed. Nonetheless, the defendant's sexual relations with D.L. violated this private trust between D.L. and himself. This factor is appropriate for consideration.

■ Though not raised by the State, we also find that T.C.A. § 40–35–114(6) providing that enhancement is appropriate where "the personal injur[y] inflicted upon ... the victim was particularly great" is applicable under the facts of this case. It is undisputed that D.L. became pregnant and gave birth to a son as a result of the sexual relations between herself and the defendant. This Court has held that "an unwanted pregnancy ... does ... come within the definition of personal injury." *State v. Jones,* 889 S.W.2d 225, 231 (Tenn.Crim.App.1994), *perm. to appeal denied,* (Tenn.1994). Therefore, we find that this enhancement factor is appropriate for consideration.

In his next issue the defendant claims that the trial court should have considered and applied all of the mitigating factors he presented at the sentencing hearing. At the hearing the trial court found that the defendant should receive credit for the factor that he had no previous history of criminal involvement but ignored the remaining five mitigating factors. Even with consideration being given to this factor, the trial judge imposed the maximum sentence.

■ The defendant argues that the trial judge should have addressed T.C.A. § 40–35–113(1) which provides for mitigation where the defendant's criminal conduct neither caused nor threatened bodily injury. However, for the reasons stated above in *Jones,* an unwanted pregnancy constitutes personal injury. It is undisputed that D.L. gave birth to a son as a result of the sexual relations between D.L. and the defendant. Further, the presentence report showed that as a result of the defendant's conduct, D.L.

had attempted suicide on two occasions and had been through psychological counseling. We find that the trial court was proper in its exclusion of this factor.

Next, the defendant asserts that the trial court should have given him credit based upon T.C.A. § 40–35–113(11) which provides for mitigation where "the defendant, although guilty of a crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the defendant's conduct." Following a review of the record, we fail to see where the defendant has provided evidence to demonstrate "unusual circumstances." This mitigation factor has no basis.

Finally, the defendant claims that the remaining three mitigating factors filed with the court fall within T.C.A. § 40–35–113(13) which permits the consideration of "any other factor consistent with the purposes of this chapter." We find nothing in the record to support the remaining factors. Two of the remaining factors concern employment history or a reliance by his wife upon his employment as a means of support. The record showed that he was unemployed and had an unsteady work history. The defendant's wife testified at the sentencing hearing but never indicated that she relied upon her husband's income for support. The defendant's most recent past employer stated in the presentence investigation report that the defendant was fired for falsification of his employment application. Further, the defendant's testimony regarding future employment possibilities was insufficient to support these mitigating factors. As to the defendant's final proposed mitigating factor stating that the victim now lives in New Jersey and will be an adult within two years, we fail to see how this factor would support mitigation in any respect.

■ Based upon our *de novo* review, we find that the trial court improperly applied T.C.A. § 40–35–114(7). However, we find that the record supports the trial court's consideration of T.C.A. § 40–35–114(4) as well as our consideration of two additional enhancement factors not relied upon by the

trial court, T.C.A. § 40–35–114(6) and (15). We find no additional mitigating factors. Here, the trial court acknowledged the existence of one mitigating factor but in its discretion gave it no weight. We find that the strength of the three enhancement factors supports the maximum sentence imposed by the trial judge.

In his final issue the defendant argues that the trial court erred in failing to grant his request for probation or some other form of alternative sentencing. T.C.A. § 40–35–303(a) provides that "[a] defendant shall be eligible for probation ... if the sentence actually imposed upon such defendant is eight (8) years or less...." Because the imposed sentence exceeds eight years, the defendant is ineligible for probation or any other form of alternative sentencing.

The sentence of twelve years imposed by the trial court is affirmed.

WADE and HAYES, JJ., concur.